UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTINA C. ANAGONYE-BENTLEY,<br><br>    Plaintiff,<br><br>v.<br><br>VILLAGE CAPITAL & INVESTMENT, LLC,<br><br>    Defendant. | Case No. 20-10713<br><br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING VILLAGE CAPITAL'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR SUMMARY JUDGMENT [22]**

Christina Anagonye-Bentley purchased a home in 2016 with a mortgage from Village Capital and Investment, LLC. For a time, a different company serviced the loan, and Anagonye-Bentley made timely payments without issue.

But when Village took over servicing the loan in May 2019, Village and Anagonye-Bentley had problems immediately. Anagonye-Bentley claims that Village did not process her payments despite her repeated efforts. Then Village reported the "missed" payments to the credit reporting agencies. Anagonye-Bentley was not able to make a successful partial payment until September, and that was the only payment Village ever accepted from her.

The situation only escalated from there. In November, Village sent Anagonye-Bentley another letter explaining that she owed a significant amount of money and demanding that she bring her account current by mid-December to avoid foreclosure.

When Anagonye-Bentley called Village, she claims that a representative told her that she could avoid foreclosure if—rather than bring the account current—she could pay just 50% of the outstanding balance. But when Anagonye-Bentley tried to do so, Village rejected her payment. Village accelerated the mortgage in January, and a sheriff's sale was scheduled for February 27, 2020.

But just before the sale was executed, Anagonye-Bentley sued Village in state court, asserting nine claims for relief and seeking to stop the sheriff's sale. A state-court judge granted her a temporary restraining order to prevent that sale through at least March 27, 2020.

Village removed the case to this court on March 17, 2020. Over a year later, in April 2021, Village filed a motion for judgment on the pleadings, to dismiss certain claims for lack of subject-matter jurisdiction, and for summary judgment. The Court held a hearing on the motion in November 2021. At the hearing, Anagonye-Bentley explained that she had evidence that proved that Village was at fault for the "missed" May and June 2019 payments. Despite the Court's direction to submit that evidence, she never did.

So the Court considers the motion on the record before it and concludes that it lacks subject-matter jurisdiction over two claims and dismisses the rest for the reasons below. Thus, the Court GRANTS Village's motion.

**I. Background**

As Village seeks a judgment on the pleadings, or, in the alternative, summary judgment, the Court accepts as true Anagonye-Bentley's version of events as pled or

supported by admissible evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (summary judgment); *Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (judgment on the pleadings).

## A. Factual Background

On November 19, 2016, Anagonye-Bentley purchased a home in Canton, Michigan for about $142,000 with a mortgage from Village. (ECF No. 22-1, PageID.354.) For a time, the loan was serviced by a third party, and Anagonye-Bentley made payments without issue. (ECF No. 22-4, PageID.373.)

However, in May 2019, Anagonye-Bentley received notice that Village would take over servicing the loan. (ECF No. 24-2, PageID.435; ECF No. 22-5, PageID.375.) As part of the transition, Anagonye-Bentley claims that Village told her she could make her May 2019 mortgage payment in June 2019. (ECF No. 24-2, PageID.435.) But when she attempted to make full payment on June 3 (by sending her credit union information to Village for automatic deposit), Village sent her a notice explaining that it was unable to process the payment and reported an error message: "NO ACCOUNT/UNABLE TO LOCATE." (ECF No. 1, PageID.51; ECF No. 24-2, PageID.435.) Then, on June 14, Village sent a letter saying that Anagonye-Bentley's account was "seriously delinquent" and demanding about $3,000. (ECF No. 1, PageID.55.) That day, Anagonye-Bentley again attempted to make payment and was again rejected. (ECF No. 1, PageID.26.) While Anagonye-Bentley's bank records show that she had funds in her account to make those payments (ECF No. 22-11,

PageID.395–396), the parties blame each other for the failure to process them (ECF No. 1, PageID.58; ECF No. 22, PageID.345).

At some point, Village reported the "missed" payments to the credit reporting agencies. (ECF No. 24-2, PageID.436.) Anagonye-Bentley demanded that Village fix her credit report, but they refused. (*Id.*)

On September 5, 2019, Village sent Anagonye-Bentley a letter demanding that she bring the mortgage current by October 10 to avoid foreclosure. (ECF No. 1, PageID.61.) Six days later, Anagonye-Bentley made a partial payment of about $3,000, which Village accepted and applied to the missed May and June payments. (ECF No. 22-4, PageID.374.) But Anagonye-Bentley's payments from July 1 onward remained due and owing. (ECF No. 22, PageID.345.)

On November 11, 2019, Village sent Anagonye-Bentley a letter informing her that she must pay nearly $7,000 by December 16 to prevent foreclosure. (ECF No. 22-6, PageID.381.) But, says Anagonye-Bentley, when she called Village to ask how to avoid foreclosure, she was told that she could do so by paying 50% of the outstanding balance. (ECF No. 24-2, PageID.436.) Relying on what she had been told, Anagonye-Bentley tendered a $4,000 cashier's check to Village on November 19. (*Id.*) But Village returned the check, listing the reason as "INSUFFICIENT TO CURE DEFICIENCY." (ECF No. 22-10, PageID.389.)

So on January 22, 2020, Village sent Anagonye-Bentley a notice of acceleration demanding the full amount owing on the loan, over $142,000 including fees and interest. (ECF No. 22-7, PageID.386.) Village advertised a notice of foreclosure sale,

4

posted a notice at Anagonye-Bentley's home, and scheduled a sheriff's sale for February 27, 2020. (ECF No. 22-8, PageID.387; ECF No. 22-9, PageID.388; ECF No. 22-7, PageID.386.)

### B. Procedural Background

Shortly before the sale, on February 18, 2020, Anagonye-Bentley filed an emergency temporary restraining order in state court against both Village and Mortgage Electronic Registration Systems, Inc (MERS) to prevent the sheriff's sale. (ECF No. 1, PageID.19–38.) She brought nine claims, including breach of contract (Count IV) and violations of the Fair Credit Reporting Act (Count VII–VIII). (*Id.*) On February 24, 2020, the state-court judge granted the temporary restraining order in a one-page form order that adjourned the sheriff's sale until at least March 27, 2020. (ECF No. 1, PageID.8.)

On March 17, 2020, Village removed the action to this Court. (ECF No. 1, PageID.1–6.) Village answered the complaint, and the case proceeded to discovery. (*See* ECF Nos. 3, 9.) In time, the parties stipulated to dismiss MERS. (ECF No. 14.)

About a year later, on April 14, 2021, Village filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), for dismissal pursuant to Rule 12(h)(3) for lack of subject-matter jurisdiction, and for summary judgment pursuant to Rule 56(a). (*See* ECF No. 22, PageID.342–343.)

The Court held a hearing on the motion on November 15, 2021. (*See* ECF No. 26.) At the hearing, Anagonye-Bentley confirmed that the sheriff's sale has been adjourned weekly since March 27, 2020, and that she has not attempted to make

5

payment to Village since her $4,000 check was rejected in November 2020. She does, however, remain in the home.

At the hearing, Anagonye-Bentley claimed to a have a deposition from a Michigan State University Credit Union representative that proved that Village was at fault for the failure to process the May and June 2019 mortgage payments, which started this controversy. But the representative's deposition was not part of the record. So the next day, the Court entered a text-only order directing Anagonye-Bentley to provide it. The Court followed up with the parties on December 8, 2021, but Anagonye-Bentley never replied. Hearing nothing, the Court will address the motion on the record before it.

## II. Subject-Matter Jurisdiction

### A. Standard of Review

Federal Rule of Civil Procedure 12(h)(3) authorizes the court to dismiss an action "at any time" for lack of subject-matter jurisdiction. A motion to dismiss brought under Rule 12(h)(3) is analyzed in the same manner as a motion to dismiss for lack of subject-matter jurisdiction brought under Rule 12(b)(1). *See Cohan v. MGM Hosp., Inc.*, No. 20-CV-10981, 2021 WL 4478744, at *1 (E.D. Mich. Sept. 30, 2021) (citing *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.3d 874, 879 n.3 (3rd Cir. 1992)). The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to a pleading. *Id.* The plaintiff has the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Spurr v. Pope*, 936 F.3d 478, 482 (6th Cir. 2019).

## B. Quiet Title (Count II) and Slander of Title (Count VI)

Village argues that this Court lacks subject-matter jurisdiction over Counts II and VI because they are unripe within the meaning of Article III.

As to Count II, Anagonye-Bentley argues that "the scheduled Sheriff's sale and any issued Sheriff's Deed has created a cloud on the title to the Property that can only be resolved through quiet title." (ECF No. 1, PageID.31.) And as to Count VI, she argues that "Village's underlying foreclosure by advertisement action is wrongful and/or illegal and constitutes a slander to plaintiff's title to the Property." (ECF No. 1, PageID.34.) But, says Village, Anagonye-Bentley is seeking "relief due to perceived harms from an event that has NOT occurred yet. The Sheriff's Sale has not happened and, therefore, it would be inappropriate for this Court to adjudicate these claims because they are not ripe." (ECF No. 22, PageID.346.)

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *United States v. Nichols*, 802 F. App'x 172, 183 (6th Cir.) (2020) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997)). Ripeness asks two questions: (1) does the claim "arise[] in a concrete factual context and concern[] a dispute that is likely to come to pass?"; and (2) what is "the hardship to the parties of withholding court consideration?" *See OverDrive Inc. v. Open E-Book*

*F.*, 986 F.3d 954, 957–58 (6th Cir. 2021) (internal quotations omitted); *see also Kentucky Press Ass'n*, 454 F.3d at 509.

Before proceeding, a brief explanation of Michigan's foreclosure by advertisement procedures is helpful. *See generally Ri Ayesh v. Chaalan,* No. 354966, 2021 WL 4494493, at *3–*4 (Mich. Ct. App. Sept. 30, 2021). In Michigan, foreclosures by advertisement are governed by statute. *See* Mich. Comp. Laws § 600.3201 *et. seq*. And the statute demands that specific procedures be satisfied before a sheriff's sale can be held. *See* Mich. Comp. Laws §§ 600.3208, 3212. After a sheriff's sale, the purchaser—including potentially the defaulting mortgagor—acquires a sheriff's deed. *See* Mich. Comp. Laws §§ 600.3228, 3232. But if someone other than the defaulting mortgagor acquires the sheriff's deed, Michigan law provides the defaulting mortgagor with a statutory period—usually six months—in which they can redeem the property. *See* Mich. Comp. Laws §§ 600.3240(7)–(12). Only if the property is not timely redeemed does the defaulting mortgagor lose all right, title, and interest in the property. *See* Mich. Comp. Laws § 600.3236; *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 927 (6th Cir. 2013) ("Under Michigan law, a plaintiff's rights in and title to property are extinguished once the redemption period expires.").

And it would be helpful to clarify exactly what Anagonye-Bentley is and is not claiming in Counts II and VI. For starters, Anagonye-Bentley has never explained how she is currently being harmed by the unscheduled and unexecuted sheriff's sale. In fact, when asked directly at the hearing to explain the basis for these claims pre-sheriff's sale, Anagonye-Bentley's counsel said he would provide a supplement but

8

never did. Instead, the only articulation of the harm that the Court received was Village's statement that Anagonye-Bentley's claims "are based upon her allegation that she will suffer injuries if, and when, the Sheriff's Sale occurs and a sheriff's deed issues." Hearing nothing from Anagonye-Bentley to the contrary, the Court reads her claims to suggest that *if* the sheriff's sale is completed or *if* the foreclosure by advertisement process is completed, *then* there is a cloud on the title (Count II) or slander of title (Count VI).

As these considerations make clear, the quiet title (Count II) and slander of title (Count VI) claims are unripe because these claims are anchored in the as yet unexecuted sheriff's sale, and Anagonye-Bentley has yet to suffer any harm from that sale. As to the first ripeness factor, Anagonye-Bentley's claims do not arise in a concrete factual context concerning a dispute that is likely to come to pass. First, it is far from certain that the sheriff's sale will ever happen. Instead, the parties could enter a repayment or special forbearance plan, loan modification, a short sale, or agree to a deed in lieu of foreclosure. Second, even if the sale did happen, Anagonye-Bentley could acquire the sheriff's deed herself or redeem the property within the statutory period, meaning she would never lose title to the property. *See OverDrive*, 986 F.3d at 958 ("[W]e do not know how that will play out . . . 'riddl[ing]' the claim with the kinds of 'contingencies and speculation' that obstruct federal 'judicial review.'" (quoting *Trump v. New York*, 141 S. Ct. 530, 535 (2020)).

As to the second factor, the hardship to the parties of withholding a ruling is minimal. First, Anagonye-Bentley remains in her home, and can apparently do so

9

through the end of the redemption period. *See Stages of Foreclosure*, Michigan State Housing Development Authority, https://perma.cc/7FJU-85YE (noting that during the redemption period, the defaulting mortgagor "can live in the property, is not required to make payments, [and] can sell or buy back [the] property[.]"). So there is ample time for Anagonye-Bentley to avoid the sheriff's sale or redeem the property absent the Court's intervention. Indeed, Village indicated its willingness to negotiate with Anagonye-Bentley at the hearing.

In her response, Anagonye-Bentley cites two cases that she believes prove that the Court has subject-matter jurisdiction over these claims. (ECF No. 24-1, PageID. 427–428.) However, those cases address the "actual controversy" standard under Michigan's declaratory judgment statute, and so they are not relevant to this constitutional ripeness analysis. *See Detroit Base Coal. for Hum. Rts. of Handicapped v. Dep't of Soc. Servs.*, 428 N.W.2d 335 (Mich. 1988) ("What is essential to an actual controversy is that plaintiffs plead and prove facts which indicate an adverse interest assuring the sharpening of the issues raised."); *Kircher v. City of Ypsilanti*, 712 N.W.2d 738 (Mich. Ct. App. 2005) ("We . . . review de novo a trial court's determination whether an actual controversy exists."). So Anagonye-Bentley has not borne the burden of proving that this Court has subject-matter jurisdiction over claims that depend on the execution of a sheriff's sale that has yet to (and may never) occur. *See Spurr*, 936 F.3d at 482.

Because Anagonye-Bentley's quiet title (Count II) and slander of title (Count VI) claims fail the test for ripeness, they are DISMISSED.

10

### III. Remaining Claims

### A. Standard of Review

Before addressing the remaining claims, the Court must consider a threshold issue: the applicable standard of review. Village has moved for judgment on the pleadings pursuant to Rule 12(c) and for summary judgment pursuant to Rule 56(a) on these claims. (*See* ECF No. 22, PageID.342–343.)

So the Court must consider whether it should convert Village's motion for judgment on the pleadings into a summary-judgment motion. Rule 12(d) directs that: "If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." And documents that a defendant attaches to a motion to dismiss are part of the pleadings only if they are "referenced in the plaintiff's complaint and . . . are central to plaintiff's claims," in addition to a few other categories not relevant here. *Gulfside Casino P'ship v. Churchill Downs Inc.*, 861 F. App'x 39, 42 (6th Cir. 2021); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Village attached 11 exhibits to its motion, including an affidavit from its litigation coordinator (ECF No. 22-4), affidavits regarding the sufficiency of its foreclosure notices (ECF Nos. 22-8, 22-9), and Anagonye-Bentley's bank records (ECF No. 22-11). These documents are not referenced in Anagonye-Bentley's complaint and are not central to her claims. And the Court notes that the parties have had more

11

than a "reasonable opportunity to present all the material that is pertinent" to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Indeed, discovery in this case lasted almost a year, and Anagonye-Bentley filed a response with an exhibit (ECF Nos. 24-2). Accordingly, this Court will treat Village's motion as one for summary judgment.

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Or, stated less formally, Village is entitled to summary judgment only if no reasonable jury could find in favor of Anagonye-Bentley. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### B. Declaratory Relief (Count I)

Anagonye-Bentley's complaint quotes Michigan's declaratory relief statute at length and then asks this Court to "declare the rights and interests of the parties and if plaintiff's rights are superior to defendants' rights." (ECF No. 1, PageID.29–30.) But Village says it "is unable to discern what Plaintiff's expectations are . . . [and so] [t]his claim fails as a matter of law because it doesn't request anything from this Court." Anagonye-Bentley makes no mention of this claim in her 11-page response. (*See* ECF No. 24-1.)

The Court agrees that it is not clear what Anagonye-Bentley wishes the Court to declare, so this claim is forfeited. *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("We have cautioned that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are forfeited, "and that

12

it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (brackets, ellipsis, citation, and internal quotation marks omitted)); *see also Wallace v. Leidos Innovation Corp.*, No. 19-5512, 2020 WL 1490751, at *4 (6th Cir. Mar. 27, 2020). So the declaratory relief claim (Count II) is DISMISSED.

### C. Illegal Foreclosure (Count III)

In her complaint, Anagonye-Bentley says that Village "failed to properly follow the requirements of the foreclosure process set forth in MCL 600.3201 *et seq.* including, but not limited to, failed to properly calculate the amount claimed to be due on the date of the notice of foreclosure," and listed several other examples. (ECF No. 1, PageID.32–33.) Village points out that Anagonye-Bentley "does not provide any documentation or evidence to support this claim." (ECF No. 22, PageID.348.) Anagonye-Bentley does not mention this claim in her response. (*See* ECF No. 24-1.)

Village is correct that Anagonye-Bentley has not properly supported this claim, so Village is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Because no reasonable jury could find for Anagonye-Bentley on the illegal foreclosure claim (Count III), it is DISMISSED.

### D. Breach of Contract (Count IV)

Anagonye-Bentley next claims that "Village did breach the contract as well as the implied covenant of good faith and fair dealing in the contract." (ECF No. 1, PageID.32–33.) Specifically, in her complaint and response brief, she points to at least five alleged breaches: (1) that Village misled her "into believing that she did not have to make the May 2019 mortgage payment in June 2019 due to the transfer of servicers[;]" (2) that it failed to "accept payments and properly apply said payments[;]" (3) that it "improperly accelerated the mortgage" and improperly calculated the amount owed; (4) that it "notified the credit agencies that Plaintiff defaulted on the note when she was up to date on her payments;" and (5) that it "chose to foreclose the mortgage when it had promised not to foreclose if plaintiff paid more than half of the outstanding balance." (ECF No. 1, PageID.32–33; ECF No. 24-1, PageID.430.)

This claim fails for at least three reasons. First, Anagonye-Bentley does not identify any specific contractual terms that Village allegedly breached. (*See* ECF No. 1; ECF No. 24-1, PageID.430.) To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract; (2) the terms of the contract; (3) that the defendant breached the contract; and (4) that the breach caused the plaintiff's injury." *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 953 (6th Cir. 2014). Although Anagonye-Bentley asserts various alleged breaches, she does not connect these allegations to any specific contract terms. And it is not for the Court to go through

14

the entirety of the referenced mortgage agreement and promissory note to determine whether some unidentified term has been breached in the manner alleged.

Second, as Village points out, Michigan law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing, so to the extent that Anagonye-Bentley attempts to assert such a claim, she fails. (ECF No. 22, PageID.348); *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 186 (6th Cir. 2017) (citing *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 279–80 (Mich. 2003)).

And finally, Village correctly points out that Michigan's statute of frauds bars Anagonye-Bentley from advancing allegations that Village orally modified the terms of the loan. (ECF No. 22, PageID.348–349.) Specifically, says Village, Anagonye-Bentley cannot claim that Village modified the loan terms when it orally told her she could make the May 2019 mortgage payment in June or that she could avoid foreclosure by paying half the outstanding balance in November 2019. (*Id.*; *see also* ECF No. 22-1, PageID.354–355 (promissory note explaining requirements for monthly payment and procedures in the event of default).

Indeed, Michigan law is clear that "no action to enforce a promise to modify a loan can be brought against a financial institution unless the promise is written and signed." *Derbabian*, 587 F. App'x at 953 (citing Mich. Comp. Laws § 566.132(2); *Crown Tech. Park v. D & N Bank, FSB,* 619 N.W.2d 66, 72 (Mich. Ct. App. 2000)). Michigan's statute of frauds "plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an

15

oral promise to waive a loan provision. . . . We read this as an unqualified and broad ban[.]" C*rown Tech.*, 619 N.W.2d at 72.

Anagonye-Bentley offers no evidence of a signed writing confirming these promises. (*See* ECF No. 24-1); *see also Huntington Nat'l Bank v. Daniel J. Aronoff Living Tr.*, No. 309761, 2014 WL 1267287, at *7 (Mich. Ct. App. Mar. 27, 2014) ("[T]he party seeking to enforce the promise or commitment must present evidence that the promise or commitment itself was reduced to writing and properly signed."). Instead, disregarding the statute's clear instruction, she claims that Village must honor its alleged oral promises based on theories of equitable estoppel or part performance. (ECF No. 24-1, PageID.430.) But such claims have already been rejected by courts in Michigan. *See Saad v. Wayne Cty. Reg. of Deeds*, No. 11-15590, 2013 WL 3455628, at *6 (E.D. Mich. July 9, 2013) ("[P]art performance is not sufficient to remove a claim from the statute of frauds applicable to financial institutions."); *Vittands v. Bank of Am., NA*, No. 11-CV-15241, 2012 WL 1696708, at *4 (E.D. Mich. May 15, 2012) ("[Equitable] estoppel [is] merely [a] creative attempt[] at skirting the evidentiary burden established by § 566.132(2)."); *see also Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 635 (6th Cir. 2018) ("State and federal courts . . . have consistently held that an action to enforce a mortgage modification lacking an authorized signature [is] barred under the statute of frauds." (quoting *Trombley v. Seterus Inc.*, 614 F. App'x 829, 833 (6th Cir. 2015)).

So the breach of contract claim (Count IV) is DISMISSED.

16

### E. Misrepresentation and Fraud (Count V)

Similarly, Anagonye-Bentley suggests that Village committed misrepresentation and fraud when it told her she could make the May 2019 payment in June and when it told her that she could avoid foreclosure by paying half of the outstanding balance in November 2019. (ECF No. 1, PageID.33.)

But this is yet another attempt to enforce an oral contract modification against a financial institution in violation of the statute of frauds. *See Scott v. Bank of Am., N.A.*, 682 F. App'x 417, 419–20 (6th Cir. 2017) (holding that the statute of frauds barred fraud claim regarding alleged oral loan modification). So the misrepresentation and fraud claim (Count V) is DISMISSED.

### F. Statutory and Willful Violations of the Fair Credit Reporting Act (Count VII–VIII)

Anagonye-Bentley claims that Village violated the Fair Credit Reporting Act when it reported inaccurate information to the credit reporting agencies, though she never specifies what information was inaccurately reported. (*See* ECF No. 1, PageID.34–35; ECF No. 24-1.) Presumably she refers to the "missed" mortgage payments in May and June 2019, and perhaps each missed payment thereafter.

The FCRA "imposes a duty on furnishers of information to provide complete and accurate information" to credit reporting agencies. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (citing 15 U.S.C. § 1681(2)). And the FCRA created a private right of action against certain financial institutions that fail to satisfy their duties under the law either negligently or willfully. *See id.* at 629 (citing 15 U.S.C. § 1681o (negligent noncompliance); 15 U.S.C. § 1681n (willful

noncompliance)). But under either theory, a plaintiff must make a "threshold showing of inaccuracy or incompleteness . . . in order to succeed." *Id.*

Village suggests that Anagonye-Bentley cannot make such a showing because the information it provided was accurate, as it did not receive a payment in June 2019 despite Anagonye-Bentley's efforts, and it has not accepted any payments since September 2019. (*See* ECF No. 22, PageID.352.) Anagonye-Bentley does not address these claims in her response brief. (*See* ECF No. 24-1.) But at the hearing, she suggested that the MSU representative's deposition proved that Village was at fault for the missed June 2019 payment because Village negligently submitted the direct debit to that bank. However, the Court never received such a deposition, so it cannot consider this non-record evidence. As such, Anagonye-Bentley has not made the threshold showing that the information Village provided to the credit reporting agencies was inaccurate. *See Celotex*, 477 U.S. at 322. So her FCRA claims (Counts VII–VIII) are DISMISSED.

### G. Injunctive Relief (Count IX)

Anagonye-Bentley also argues that she is entitled to injunctive relief. "A court can only enjoin a foreclosure as a remedy, not as a separate cause of action." *Khadher v. PNC Bank, N.A.*, 577 F. App'x 470, 481 (6th Cir. 2014) (citing *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013)). So this claim is DISMISSED.

## IV. Conclusion

For the reasons stated, Village's motion to dismiss for lack of subject-matter jurisdiction and for summary judgment is GRANTED. (ECF No. 22.) A separate judgment will follow.

SO ORDERED.

Dated: January 19, 2022

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
                                            UNITED STATES DISTRICT JUDGE